# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE PEARL SAUL, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 1:17-cv-01744-BAM <br><br> **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## INTRODUCTION

Plaintiff Annette Pearl Saul ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

Having considered the parties' briefs, along with the entire record in this case, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. Nos. 7, 8.)

1

record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## BACKGROUND

On April 22, 2009, Plaintiff filed an application for SSI alleging disability beginning August 4, 1989. AR 99-105.[2] Plaintiff's application was denied initially and on reconsideration and Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). AR 48-72. ALJ Susanne Lewald held a hearing on November 18, 2011, and issued an order denying benefits on January 9, 2012. AR 16-41. The Appeals Council denied review. AR 4-6. After Plaintiff filed a complaint for judicial review, the parties stipulated to remand Plaintiff's case for further administrative proceedings. AR 428-441, 446-455. The ALJ held a second hearing on March 15, 2016, and issued an order dated May 4, 2016, finding Plaintiff disabled as of February 27, 2013, but denying benefits prior to that date. AR 346-409. The Appeals' Council denied review and this appeal followed. AR 335-338.

**Hearing Testimony**

The ALJ held a hearing on March 15, 2016, in San Francisco, California. AR 369. Plaintiff appeared by video from Bakersfield, California, and was represented by her attorney, Cyrus Safa. AR 369. Medical Experts ("ME") Dr. Morton Tavel and Dr. William Debolt and Vocational Expert ("VE") Christopher Salvo also appeared. AR 369.

ME Dr. Tavel, a cardiologist, confined his testimony to cardiac issues. AR 372. Based on his review of the medical record, Dr. Tavel opined that Plaintiff did not have a medically-determinable cardiac impairment. AR 372. Specifically, Dr. Tavel explained that Plaintiff experienced one cardiac event, which took place in March of 2012, and did not last twelve months or more. AR 372-374.

ME Dr. Debolt then testified that, based upon his review of the medical records, Plaintiff has constant low-back pain, neck pain, arterial sclerotic heart disease, broad right femur, a current kidney stone, and degenerative disc disease of the cervical and lumbar regions with radiculitis at the cervical spine. AR 374-375. However, in Dr. Debolt's opinion, none of these conditions either singly or in combination met any of the relevant listings. AR 375-376. Specifically, Dr. Debolt considered listing

---

[2] References to the Administrative Record will be designated as "AR" followed by the appropriate page number.

2

1.04 and found that it was not met. AR 376. Dr. Debolt nonetheless opined that Plaintiff had functional limitations with respect to her ability to perform work-related activities and could stand and walk for a cumulative total of six hours in an eight-hour day, sit for six hours in an eight-hour day, lift and/or carry ten pounds frequently and twenty pounds occasionally, never climb ladders or scaffolds, occasionally stoop, crouch, climb stairs, kneel, or crawl, could not reach overhead, and would have limited ability to work at heights and with heavy machinery. AR 376-378.

In response to questions from Plaintiff's attorney, Dr. Debolt testified that there were no physical findings or complaints of numbness or loss of feeling in Plaintiff's hand, with the exception of lying in bed at night which was quickly relieved. AR 379. Plaintiff's attorney questioned Dr. Debolt about the lack of manipulative limitations in his recommendation and Dr. Debolt testified that Plaintiff's grip strength findings indicated that there was a slight impairment of muscle strength, which was assumedly due to pain, but Plaintiff had seven other normal neurological examinations throughout the medical record. AR 379-381. When asked about the clinical significance of Plaintiff's bone scan showing abnormal focal activity along the medial aspect of the right femoral diaphysis, Dr. Debolt testified that he is not an orthopedist and was unsure if he could answer the question. AR 381-382. Dr. Debolt further testified that Plaintiff's EMG indicating lower velocity in her fingers signified that complaints of numbness in the hand could be chronic or indicate that there was some slight abnormality in the sensory function of the nerves, or it may have no clinical manifestation at all. AR 382-383.

Plaintiff testified that she was incarcerated prior to her application date and was released in February of 2009. AR 384. Plaintiff experienced pain in her neck, back, leg, elbows, and hands while she was incarcerated and was required to stay in the lower bunk because she was unable to climb up the steps to the top bunk. AR 385. Plaintiff applied for work release but was not allowed to participate in work programs while incarcerated due to her medical issues. AR 385-386.

Plaintiff further testified that her pain is more severe during the winter due to cold. AR 386. She uses a cane frequently, although not every day. AR 386-387. Plaintiff sometimes uses an electric cart to do her grocery shopping, particularly in large grocery stores, but can shop in smaller grocery stores without the assistance of an electric cart if she is only purchasing a few items and leans on the cart. AR 388-389. Plaintiff estimates that she can only lift up to ten pounds due to pain. AR 389.

Within the last five to six years, Plaintiff has begun falling more frequently and has broken ribs as a result. AR 389. Plaintiff additionally has difficulty gripping and grasping in both hands and frequently drops items. AR 389-390. Plaintiff has pain primarily in her pinky and ring finger that extends up through her forearm and shoulder as well as stiffness in all fingers. AR 390-391. She has difficulty turning her neck both ways. AR 391. Plaintiff does not currently drive and does not have a driver's license, although she previously had a driver's license prior to her incarceration in 2009. AR 391-392.

Plaintiff is currently taking Norco for pain and was previously prescribed Vicodin. AR 392. Norco makes Plaintiff feel sick to her stomach and Vicodin made her drowsy. AR 392. When asked about her daily activities, Plaintiff testified that she watches television. AR 393. Plaintiff can wash the dishes for approximately five minutes before she must rest due to pain. AR 393. Plaintiff cannot vacuum or do yardwork. AR 393, 395. Plaintiff's pain symptoms worsen during winter due to the cold and she experiences muscle spasms in her back, primarily in between her shoulder blades. AR 394. Plaintiff lives alone in a one-story house. AR 394. She cooks her own meals, consisting primarily of TV dinners and microwaveable items. AR 394. Plaintiff enjoys puzzles and her grandchildren come to visit her on occasion. AR 395.

Plaintiff experiences pain and stiffness in her leg, back, neck, and arms if she sits for extended periods of time. AR 395-396. She had a CT scan of her brain performed in February of 2015 which revealed a potential tumor. AR 396. Although hospital notes from March of 2012 revealed Plaintiff had previously used methamphetamine, Plaintiff testified that she no longer uses methamphetamine and has not since that time, does not use any other drugs, and was previously an alcoholic but has not consumed alcohol since 2009. AR 396-397.

In response to questioning from the ALJ, Plaintiff testified that she has not had any mental health treatment other than a grief group that she previously attended. AR 397-398. The last job Plaintiff held was performing in-home services for a few months in approximately 2000. AR 398. Plaintiff supports herself with assistance from her mother and was previously receiving Aid to Families with Dependent Children benefits while her son was at home, food stamps, and child support. AR 399. At the time of the hearing, Plaintiff was 54 years old. AR 399.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Christopher Salvo. The VE testified that Plaintiff had no past relevant work. AR 400-401. The ALJ also asked the VE hypothetical questions. AR 401-406. For the first hypothetical, the ALJ asked the VE to assume a person of the same age, education, and work background as Plaintiff. AR 401. This hypothetical person is able to sit up to four hours out of every eight hours, stand and/or walk up to four hours out of every eight hours, lift up to ten pounds occasionally and five pounds frequently, occasionally stoop, crouch, and climb stairs, never use ladders, ropers, or scaffolds, never reach overhead with the bilateral upper extremities, never work from unprotected heights, never work around hazardous equipment or machinery, and never be exposed to concentration of extreme cold. AR 401. The VE testified that there would be jobs available as a final assembler, eyeglass frame inspector, lens inspector, addressor, or small products assembler. AR 401-405. For the second hypothetical, the ALJ asked the VE to assume that the person in the first hypothetical would require an assistive device such as a cane for walking long distances or uneven terrain. AR 405-406. The VE testified that the same jobs identified in response to the first hypothetical would be available. AR 406.

When questioned by Plaintiff's attorney, the VE testified that each of the occupations identified in response to the hypothetical questions posed by the ALJ has some level of reaching required but the limitation of no overhead reaching bilaterally had no impact on the occupational numbers the VE described. AR 406. The VE testified that his response was based upon talking to people who have done the same type of work, employers, others who have worked as expert witnesses, vocational experts, and/or rehabilitation counselors, as well as personal observation. AR 406-407. Additionally, the VE testified regarding the sources from which he derived job numbers for the positions identified in response to the ALJ's hypotheticals. AR 407-408.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to the Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act prior to February 27, 2013, but

became disabled on that date. AR 346-357. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since August 4, 1989, her alleged onset date. AR 349. Further, the ALJ identified degenerative disc disease of the cervical and lumbar spine, left ulnar neuropathy, status post right lower extremity fracture with rod placement, myofascial pain syndrome, and Takotsubo cardiomyopathy as severe impairments. AR 359-350. Nonetheless, the ALJ determined that, since the alleged onset date of August 4, 1989, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 350. Since August 4, 1989, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with modifications of sitting up to four hours out of eight hours, standing and/or walking up to four hours out of eight hours with a cane for long distances, lifting and/or carrying ten pounds occasionally and five pounds frequently, never working from ladders, ropes, or scaffolds, occasionally stopping, crouching, crawling, pushing, pulling, and climbing stairs, no overhead reaching bilaterally, no work from unprotected heights or around hazardous equipment, and no exposure to extreme cold temperatures. AR 350-355.

The ALJ found that Plaintiff had no past relevant work and, prior to the established disability onset date, Plaintiff was a younger individual aged 45-49. AR 355. On February 27, 2013, Plaintiff's age category changed to an individual closely approaching advanced age. AR 355. The ALJ further found that Plaintiff has a limited education and is able to communicate in English. AR 355. Additionally, transferability of job skills was not an issue because Plaintiff had no past relevant work. AR 355. Prior to February 27, 2013, the date Plaintiff's age category changed, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. AR 355-356. However, beginning February 27, 2013, considering Plaintiff's age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. AR 356. Thus, the ALJ concluded that Plaintiff was not disabled prior to February 27, 2013, but became disabled on that date and continued to be disabled through the date of the decision. AR 356. The ALJ further found Plaintiff's substance use disorder(s) to not be a contributing factor material to the determination of disability. AR 356.

# STANDARD OF REVIEW

**Disability Standard**

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**Scope of Review**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must consider both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must therefore uphold the Commissioner's determination that a claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

# DISCUSSION[3]

Plaintiff's sole issue on appeal is that the ALJ erred in evaluating the opinion of Plaintiff's treating physician, Robert Wolney, M.D. (Doc. No. 18 at 7-12.) Plaintiff requests a direct award of benefits or, in the alternative, a remand for further proceedings. (Doc. No. 18 at 12.)

Cases in this circuit identify three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are entitled to the most weight, while the opinions of examining physicians are entitled to more weight than the opinions of nonexamining physicians. *Id.* This is because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990). Where the opinion of an examining or treating physician is uncontroverted, the ALJ must provide clear and convincing reasons for rejecting that opinion. *Lester*, 81 F.3d at 830-31. Even if contradicted by another doctor, the opinion of an examining or treating doctor can be rejected only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

On October 3, 2008,[4] Dr. Wolney completed a physical capacities questionnaire form in response to a request from the Kern County Department of Human Services to assist in their evaluation of Plaintiff's ability to participate in work, training, or educational activities as part of the California Work Opportunity and Responsibility to Kids program. AR 194-198. Dr. Wolney opined that Plaintiff can stand and/or walk zero to two hours per day in an eight-hour workday and sit zero to two hours per day

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

[4] The ALJ's decision also discussed an April 2010 opinion from Dr. Wolney. However, Plaintiff's briefing solely argues that the ALJ erred in rejecting Dr. Wolney's October 2008 opinion and does not address any of the reasons cited by the ALJ in discounting the April 2010 opinion.

8

in an eight-hour workday. AR 196. Plaintiff had no restrictions on using her hands and/or fingers for repetitive motions but was restricted in using her feet for repetitive movements due to chronic right leg pain from a severe motor vehicle accident. AR 196. In Dr. Wolney's opinion, Plaintiff was further restricted in her abilities by environmental factors such as coldness, which caused Plaintiff to experience more severe back and leg pain. AR 196. Dr. Wolney further opined that Plaintiff could lift ten pounds occasionally, could never lift more than fifteen pounds, and could never climb, balance, stoop, kneel, crouch, or crawl. AR 197. When asked if Plaintiff could reach, Dr. Wolney opined she could do so "occasionally" but also indicated that she could never reach below her knees, waist to knees, waist to chest, chest to shoulders, or above her shoulders. AR 197. Further, Dr. Wolney indicated that Plaintiff was being prescribed medications that could affect her ability to work and she had difficulty sitting in one position for more than a few minutes. AR 197-198.

In assessing Dr. Wolney's opinion, the ALJ stated as follows:

> In October 2008, Robert Wolney M.D. authored a physical capacities questionnaire. He opined that the claimant was capable of occasionally lifting 10 pounds; sitting for zero to two hours of an eight-hour day; standing and walking for zero to two hours of an eight-hour day; never perform any climbing, balancing, stooping, kneeling, crouching or crawling; no reaching below knees, waist to knees, waist to chest, chest to shoulders or above shoulders but can occasionally reach otherwise; and mast [sic] avoid extremes of cold. (Exs. 3F, 23F). This opinion is given little weight because there are no treatment notes consistent with this level of incapacity, nor was the course of treatment consistent with such limitations. Specifically, the claimant had not been referred out for physical therapy or pain management and her treatment consisted solely of taking Vicodin.

AR 354.

Here, Dr. Wolney's opinion was contradicted by ME William Debolt, M.D., consultative examining physician Emanuel Dozier, M.D., and non-examining physician M. Nawar, M.D., all of whom opined that Plaintiff's limitations were less severe than those opined by Dr. Wolney. AR 234, 237-240, 375-378. For instance, Dr. Debolt opined that Plaintiff was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, standing and walking six hours out of an eight-hour workday, and sitting six hours out of an eight-hour workday. AR 375-378. Dr. Dozier opined that Plaintiff can lift twenty pounds occasionally and ten pounds frequently, sit for four hours in an eight-hour workday, stand and/or walk for four hours in an eight-hour workday, occasionally bend, stoop,

crouch, push, and pull, and occasionally climb ladders and walk on inclined planes and uneven terrain. AR 234. Dr. Nawar, in turn, opined that Plaintiff can lift twenty pounds occasionally and ten pounds frequently, stand and/or walk for at least two hours in an eight-hour workday, sit for six hours in an eight-hour workday, frequently balance, kneel, and crawl, and occasionally climb ramps and stairs, stoop, and crouch. AR 237-240. Given that these opinions contradicted Dr. Wolney's opinion regarding the severity of Plaintiff's limitations, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record to discount Dr. Wolney's opinion.

Plaintiff argues that the first reason that the ALJ identified for discounting Dr. Wolney's opinion, *i.e.,* that there are no treatment notes consistent with the level of incapacity Dr. Wolney described, lacks the support of substantial evidence. (Doc. No. 18 at 8.) An ALJ may properly discount a treating physician's opinion that is not supported by the medical record, including his own treatment notes. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting treating physician's opinion); *Tommasetti*, 533 F.3d at 1041 ("incongruity" between doctor's questionnaire responses and her medical records provided specific and legitimate reason for rejecting doctor's opinion); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings"); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Here, as indicated by the ALJ, the treatment notes in the record do not contain findings that are consistent with the degree of limitations to which Dr. Wolney opined. *See* AR 184-193, 1013-1043. While Plaintiff cites to her complaints of acute pain and soreness as well as clinical tests performed prior to Dr. Wolney's October 2008 opinion in arguing that the medical record is consistent with Dr. Wolney's assessment of Plaintiff's limitations, these records generally demonstrate modest degenerative changes or contain findings that Plaintiff's providers describe as "very unspecific." *See* AR 174, 181, 206, 214. Plaintiff additionally points to a November 2008 motor vehicle accident and an October 2009

consultative examination, both of which occurred after the date of Dr. Wolney's opinion. (Doc. No. 18 at 9.)

A review of the record reveals that there is substantial evidence supporting the ALJ's finding that the relevant treatment notes are inconsistent with the severity of the limitations set forth in Dr. Wolney's October 2008 report. *See* AR 199-206, 210-228, 1013-1043. While the treatment records reflect Plaintiff's reports of pain, they do not contain any findings substantiating Dr. Wolney's opinion that, as of October 2008, Plaintiff was only able to sit, stand, and walk for zero to two hours per day and could never perform any climbing, balancing, stooping, kneeling, crouching, crawling, or reaching. AR 195-198; *see also Richardson*, 402 U.S. at 401 (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Lingenfelter v. Astrue, 504 F.3d 1028, 1035* (9th Cir. 2007) (Court "may not affirm simply by isolating a specific quantum of supporting evidence."); *Tommasetti*, 533 F.3d at 1041-1042 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995) (Where "the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the [ALJ]."). There is little indication in the record or in Dr. Wolney's report itself what the bases for these restrictions might be. Considering the record as a whole and weighing both the evidence and supports and detracts from the ALJ's conclusion, the Court considers the ALJ's finding that the treatment notes in the record are inconsistent with Dr. Wolney's opinion to be supported by substantial evidence and without legal error.

Plaintiff next argues that the ALJ erred in rejecting Dr. Wolney's opinion because Plaintiff's course of treatment was inconsistent with the opined level of incapacity. (Doc. No. 18 at 9.) According to Plaintiff, it was improper for the ALJ to deny benefits on this basis because Plaintiff was unable to afford necessary treatment. (Doc. No. 18 at 9-10.) In support of this argument, Plaintiff cites to Dr. Wolney's April 24, 2008 treatment notes and May 1, 2008 telephone message notes. (Doc. No. 18 at 9.) However, Dr. Wolney's April 24, 2008 treatment notes merely state that Plaintiff was previously seeing a neurologist named Dr. Young but could not afford to continue seeing him, so Dr. Wolney was to refer Plaintiff to a different neurologist. AR 1023. Accordingly, these treatment notes do not state that Plaintiff was unable to afford any form of recommended treatment and instead only indicate that

she switched providers due to cost. The May 1, 2008 telephone message notes, in turn, state that Plaintiff spoke with Dr. Wolney's office by telephone and reported that her orthopedic surgeon, Dr. Coppola, would be sending his notes requesting that Dr. Wolney give Plaintiff her Vicodin prescription so that her local health plan, Kern Family Health Care, would cover the cost. AR 1022. Dr. Wolney's written notes of his response state that that Dr. Coppola's notes did not contain any such request and Kern Family Health Care does not cover Vicodin, so Plaintiff would need to make an appointment and pay for her prescription. AR 1022. There is nothing in these notes or the record as a whole indicating that Plaintiff was not, in fact, able to afford her medications or any other treatment.

Plaintiff additionally cites to *Gamble v. Chater,* 68 F.3d 319 (9th Cir. 1995) for the proposition that "[a]n ALJ may not deny benefits where a claimant cannot afford necessary treatment." (Doc. No. 18 at 9.) While *Gamble* acknowledged the basic principle that "[d]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds," that principle does not apply to the facts here. *Gamble,* 68 F.3d at 320. The ALJ did not discount Dr. Wolney's opinion because Plaintiff failed to obtain treatment, conservative or otherwise, that was recommended by her providers. Instead, the ALJ discounted Dr. Wolney's opinion because the treatments that Plaintiff's providers prescribed were conservative in nature and therefore inconsistent with the severity of the limitations described in Dr. Wolney's report. Whether Plaintiff was able to afford treatment was immaterial to this finding because the ALJ's inquiry was the type of treatment prescribed, not Plaintiff's failure to obtain the recommended treatment.

Here, in considering the objective medical evidence and other evidence of record, the ALJ noted that the only treatment Plaintiff had been provided was prescription medications; no other treatment, such as physical therapy, that would be expected with significant functional difficulties was provided. AR 352. The record before the Court indicates, and Plaintiff does not dispute, that Plaintiff's providers only prescribed medication for her pain and had not recommended any more aggressive forms of treatment as of the date of Dr. Wolney's October 2008 opinion. The ALJ therefore properly relied on the inconsistency between Plaintiff's prescribed course of treatment and the level of limitation set forth in Dr. Wolney's report in discounting his opinion. *See Wilson v. Berryhill*, 2018 WL 1425963, at *29 (E.D. Cal. Mar. 22, 2018) (ALJ properly rejected opinion of treating physician who "prescribed only a

conservative treatment plan (*i.e.,* medications and without physical therapy, injections, or braces)"); *Butler v. Colvin*, 2013 WL 1281777, at *4 (E.D. Cal. Mar. 27, 2013) ("An ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet opines that a claimant suffers disabling conditions."); *Harris v. Comm'r of Soc. Sec. Admin.*, 2017 WL 2060418, at *5 (D. Ariz. May 15, 2017) (ALJ's rejection of treating physician's opinions proper where they were "inconsistent with the medical evidence that demonstrated [the plaintiff] improved while undergoing conservative treatment and medication.").

Moreover, in discussing the inconsistency between Plaintiff's prescribed course of treatment and the alleged impact of her pain, the ALJ further cited to Plaintiff's acknowledgement that Vicodin substantially reduced her pain level. AR 352. In fact, on September 30, 2008, approximately four days prior to Dr. Wolney's October 2008 report, Plaintiff rated the pain in her right leg at a two or three with her current treatment plan of Vicodin. AR 200. Evidence that a plaintiff responded positively to conservative treatment can undermine a claim of disabling pain. *See Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]"); *Tommasetti,* 533 F.3d at 1040 (improvement with conservative treatment undermined allegations of disabling symptoms). The ALJ's finding in this regard is therefore supported by substantial evidence and does not constitute legal error.

///
///
///
///
///
///
///

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court

**DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff Annette Pearl Saul.

IT IS SO ORDERED.

Dated: **March 25, 2019**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE